Honorable Ralph Munro Secretary of State P.O. Box 40232 Olympia, Washington 98504-0232
Dear Secretary Munro:
By letter previously acknowledged, you have requested our opinion on the following questions which we have slightly paraphrased for clarity:
 May election officials in the state of Washington accept, as an application for permanent voter registration under state law, a postcard form prescribed by the federal government pursuant to The Uniformed and Overseas Citizens Absentee Voting Act?
 If the answer to question one is in the affirmative, is acceptance of the form for voter registration mandatory on Washington state election officials?
 If the answer to question one is in the affirmative, can the same form be treated as an application for "continuing absentee" status as described in RCW 29.36.013?
 Does any written request for voter registration containing the elements specified by RCW 29.07.005 constitute a valid voter registration application? Does the answer to this question depend on whether the applicant signs the oath specified in RCW 29.07.080 or another oath containing substantially the same information?
 BRIEF ANSWERS
Because the post card form attached to your opinion request contains all the information currently required by Washington state statute to register a voter and states on the postcard form that it is a request for registration, Washington state election officials may accept the postcard as an application for voter registration in this state. Because the Secretary of State has the authority to require additional voter information, as well as the authority to prescribe voter registration forms, the acceptance of the postcard form is not mandatory but within the discretion of the Secretary of State.
The postcard form should be treated as a request for ongoing absentee status under RCW 29.36.013. Election officials can accept any form containing the elements specified in RCW 29.07.005 as a voter registration application. The Secretary of State and the county auditors retain some authority to impose reasonable restrictions on the forms which are acceptable.
 ANALYSIS Background
As explained in your opinion request, your questions involve two different federal election acts, as well as some recent amendments to state election law.
Although the state of Washington has established (and operates) its own election system as prescribed in state law, Congress has constitutional power (U.S. Const. art. I, § 4) to regulate the time, place, and manner of electing members of Congress, as well as the power to regulate the selecting of electors to choose the president and vice-president of the United States (U.S. Const. art. II, § 1). Congress has exercised this power several times in recent years. In the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. §§ 1973ff through 1973ff-6 (1996), Congress prescribed certain requirements aimed at making it easier for armed services personnel and overseas voters to register and vote for federal offices. Among these requirements was the establishment of a postcard form (see 42 U.S.C. § 1973ff (1996)) containing both an absentee voter registration application and an absentee ballot application for use by the states.[1] The federal legislation recommends that states accept the postcard form for "simultaneous voter registration application and absentee ballot application[.]" 42 U.S.C. § 1973ff-3 (1996). The form is known as the "FPCA" form as the abbreviation for its official name ("Federal Post Card Application").
Up to now, it has not been the practice in Washington to accept the FPCA form as a regular voter registration form. Pre-1995 state law required more information of applicants for voter registration than the FPCA form included. Compare RCW 29.07.070 (version effective before January 1, 1995) with the FPCA form (Attachment A to this Opinion.) The FPCA form was accepted only as a waiver of registration. Persons submitting the form were sent ballots and allowed to vote, but their names were not entered on the official roll of voters. In effect, then, election officers had to maintain two lists: the official roll of fully-registered voters and a second list of "FPCA voters."
In 1994, the state Legislature significantly amended most of the state voter registration laws (Laws of 1994, ch. 57). This legislation was largely in response to another federal statute, the National Voters Registration Act (42. U.S.C. §§ 1973gg through 1973gg-7) ("NVRA"), which requires states to accept a simple and relatively streamlined form of voter registration for all elections to federal office.[2] The passage of the NVRA required states either to amend their election laws to conform or to operate two election systems: one for federal and one for state and local elections.
Washington chose to amend its state laws to meet the NVRA requirements. Section 18 of the 1994 Act, codified as RCW 29.07.140, instructs the Secretary of State to "specify by rule the format of all voter registration applications." This section further provides that [a]ny application format specified by the secretary for use in registering to vote in state and local elections shall satisfy the requirements of the National Voter Registration Act of 1993 (P.L. 103-31) for registering to vote in federal elections.
The 1994 legislation also added a new definition to the information required for voter registration (RCW 29.07.005) and revised RCW 29.07.070 (voter application information.)
With this background in mind, we proceed to your questions.
 1. May election officials in the state of Washington accept, as an application for permanent voter registration under state law, a postcard form prescribed by the federal government pursuant to The Uniformed and Overseas Citizens Absentee Voting Act?
As noted above, FPCA postcards have not been accepted for voter registration purposes in the past because they did not contain all the information required of applicants to register to vote in this state. Since the 1994 amendments to chapter 29.07 RCW, however, the FPCA clearly meets the requirements for a voter registration application. We note first RCW 29.07.005, which provides as follows:
 "Information required for voter registration" means the minimum information provided on a voter registration application that is required by the county auditor in order to place a voter registration applicant on the voter registration rolls. This information includes the applicant's name, complete residence address, date of birth, and a signature attesting to the truth of the information provided on the application. All other information supplied is ancillary and not to be used as grounds for not registering an applicant to vote.
From this statute, it is clear that the only information which the statute requires to be provided is: name, complete residence address, date of birth, and signature attesting the truth of the information. The FPCA form contains all of this information. Section 1a of the form is the applicant name, section 1d is the date of birth, section 3 is the voting residence (including number and street, city or town, county, state, and zip code), and section 8i is a signature just below a line stating "[t]he information on this form is true and complete."
Although RCW 29.07.005 clearly states that only the information above is required, in the sense that only the absence of that information will justify denying voter registration, RCW 29.07.070 provides in part that:
 [e]xcept as provided under RCW 29.07.260,[3] an applicant for voter registration shall provide a voter register with the following information concerning his or her qualifications as a voter in this state.
RCW 29.07.070, requires the applicant's name, date of birth, and residence for voting purposes. These items are also required by RCW 29.07.005, and are supplied on the FPCA form. In addition, RCW 29.07.070 requires the applicant's last voting address, current mailing address, and sexitems not mentioned in section 29.07.005, but shown on the FPCA form (sections 2, 1b, and 4, respectively). RCW 29.07.070 requires "a declaration that the applicant is a citizen of the United States." The FPCA form contains this also (section 8 of the form) and amounts to an affirmation of citizen ship. Finally, RCW 29.07.070(8) permits the Secretary of State to require
 [a]ny other information that the secretary of state determines is necessary to establish the identity of the applicant and prevent duplicate or fraudulent voter registrations.
RCW 29.07.070(8).
Since the FPCA form contains all of the information the statutes require for voter registration, the only question remaining is whether the statutes require that the information be supplied in a particular form. We conclude that they do not. Both RCW 29.07.005 and 29.07.070 speak of "infor mation required" and do not prescribe any particular form. As noted above, RCW 29.07.140 authorizes the Secretary of State to "specify by rule the format of all voter registration applications." This statute does not require that all registrations be on the prescribed form, however, merely that the essential information be provided.
Thus, we conclude that an FPCA postcard, which is entitled "Registration and Absentee Ballot Request," supplies all the necessary information to register the sender of the postcard as a voter, and therefore could be accepted for voter registration under current statutory law.
 2. If the answer to question one is in the affirmative, is acceptance of the form for voter registration mandatory on Washington state election officials?
Although state statute would permit acceptance of the FPCA form for voter registration purposes, it does not require it. The main reason for this answer to your second question is the discretion granted your office: First, to require more information of the voters than the statutory minimum (RCW 29.07.070(8)); and second, to specify the format of all voter registration applications (RCW 29.07.140). If your office chose to require, under RCW 29.07.070, information not contained on the FPCA form or a format inconsistent with the form, the form would (by definition of course) no longer meet your requirements.[4] However, as noted below in our discussion of your fourth question, there seems little basis for rejecting the FPCA form as an application for voter registration, as it contains all the information requested by the statute and meets the expressed legislative preference for satisfying federal as well as state law requirements.
In mentioning the Secretary of State's rulemaking authority, we do not mean to imply that rulemaking is a procedural prerequisite to acceptance of the FPCA form. The statute is flexible enough to allow county auditors to accept the form now, and nothing in the statute implies that rulemaking must occur before it can be applied. We simply note that, if there are strong policy reasonsnot to accept the FPCA form, or to limit its use in some way, there is room for administrative interpretation.
 3. If the answer to question one is in the affirmative, can the same form be treated as an application for "continuing absentee" status as described in RCW 29.36.013?
Chapter 29.36 RCW contains the statutes concerning absentee voting. RCW 29.36.010 describes the procedure for requesting an absentee ballot in a specific election, and RCW 29.36.013 permits an application for "ongoing absentee status," providing as follows:
 Any voter may apply, in writing, for status as an ongoing absentee voter. Each qualified applicant shall automatically receive an absentee ballot for each ensuing election for which he or she is entitled to vote and need not submit a separate request for each election. Ballots received from ongoing absentee voters shall be validated, processed, and tabulated in the same manner as other absentee ballots.
We note, first of all, that the statute merely requires that an application for "ongoing absentee status" be in writing, and does not prescribe any particular form. The only question, then, is whether the FPCA form, which is of course in writing, qualifies as an "application."
In our opinion, it does. The FPCA form contains the sentence "I request absentee ballots for all elections in which I am eligible to vote." This phrase is necessarily general, as the FPCA form is intended to operate in fifty states with fifty different election systems. While the phrase can be read to mean "I request a ballot to vote for all offices or positions for which I am eligible to vote," its wording (all elections in which I am eligible to vote) makes it more than likely that the form was also intended to cover as many "elections" as the state would permit it to cover. In other words, if a state allows "ongoing absentee status," the form was intended to request it.
Since Washington does allow ongoing absentee status, it seems most sensible to treat an FPCA form as requesting it. The alternative would be to require uniformed service personnel and overseas voters (who more typically are abroad for several months or even years) to file a separate request for each election, primary or general, as well as for any special elections which might be held. This would put an extra burden on the voter, and also an extra burden on election officials to process the extra applications and keep accurate rolls. We are not aware of any strong policy argument in favor of forcing such additional paperwork. Accordingly, we conclude that the FPCA form should be treated as a request for ongoing absentee status, and processed accordingly.
 4. Does any written request for voter registration containing the elements specified by RCW 29.07.005 constitute a valid voter registration application? Does the answer to this question depend on whether the applicant signs the oath specified in RCW 29.07.080 or another oath containing substantially the same information?
In this question, you expand the subject of discussion beyond the FPCA form to include other "nonstandard" forms which applicants to register might use. The basic principle is the same: A written document containing the information required by the statute could be accepted and processed as an application for voter registration.
However, we note again your office's role in defining both the information required for registration and the format for voter registration applications. On the one hand, the current statute calls for flexibility in dealing with applicants who may be able to provide all the essential information needed for registration, but do not have ready access to the prescribed form. On the other hand, there are practical limits to this flexibility, as state and county officials need to maintain the forms submitted as public records.[5] Setting these practical limits seems to be a function for rulemaking. Other subjects which might be considered include the definition of the oath which must be on file for each applicant[6] and the way to obtain or preserve information in a form to prevent duplicate or fraudulent registration.
We trust this information will be of assistance.
Very truly yours,
CHRISTINE O. GREGOIRE
JAMES K. PHARRIS Senior Assistant Attorney General
[1] A photocopy of the postcard form is attached to this opinion as Attachment A.
[2] The NVRA requires acceptance, for federal election purposes at least, of a voter registration form prescribed by the Federal Elections Commission ("FEC"). Although the state's 1994 amendments were enacted in part to accommodate use of the FEC form, the FEC form is not the subject of your question or of this opinion.
[3] RCW 29.07.260 allows a person to register to vote or to transfer a voter registration when applying for or renewing a driver's license. This "motor voter" provision calls for an application with information substantially similar to that called for by RCW 29.07.070. This statute will not be further discussed here, as it obviously will not come into play when an FPCA postcard application is used, but it illustrates that the Legislature has not prescribed any single voter registration form.
[4] At this point, we note that RCW 29.07.070 seems to allow the Auditor to delay or deny voter registration for failure to provide the information outlined in that section, while RCW 29.07.005 (enacted as part of the same bill) seems to preclude a denial of registration unless one of more of the four items listed in that
section has not been provided. The most likely explanation of this ambiguity in the law appears to be that (1) a county Auditor may request additional information from voter registration applicants who do not supply information on one or more of the categories listed in RCW 29.07.070, but (2) the Auditor may ultimately deny registration only to applicants who fail to provide one or more of the "essential" elements listed in RCW 29.07.005. In the short term, this point might be an appropriate subject for rulemaking by your office; in the longer term, it might be a subject for a clarifying amendment.
[5] For instance, we doubt that it would be practical to store a form written in chalk on a black board, or in icing on a cake, or in spray paint on a building. Paper that is too thin, or has a high acid content, might have too short a "shelf life" to serve as a permanent voter record.
[6] RCW 29.07.080 and RCW 29.07.260 both contain oaths which include the same information but in slightly different forms, while the FPCA oath contains the same information in yet a third form.